IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-71-D

| | | |
|---|---|---|
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| HOWARD ANTONIA GOSNELL, GLENDA GRANTHAM GOSNELL, and ROBIN GOSNELL LOGAN, Administrator of the Estate of Nancy Snow Gosnell, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

On February 27, 2015, Nationwide Property and Casualty Insurance Company ("Nationwide") brought suit against Howard Antonia Gosnell, Glenda Grantham Gosnell, and Robin Gosnell Logan (collectively "defendants") seeking a declaratory judgment concerning insurance coverage under an underinsured motorist liability provision [D.E. 1]. On May 4, 2015, defendants answered the complaint and asserted a counterclaim for declaratory judgment [D.E. 11]. On May 21, 2015, Nationwide answered defendants' counterclaim and moved to dismiss any claim alleging bad faith [D.E. 13]. On July 13, 2015, the court granted Nationwide's motion to dismiss any claim alleging bad faith [D.E. 18].

On November 3, 2015, defendants moved for judgment on the pleadings and filed a supporting memorandum [D.E. 20, 21]. On December 3, 2015, Nationwide moved for judgment on the pleadings and filed a supporting memorandum [D.E. 22, 22-2]. On December 8, 2015, defendants responded in opposition to Nationwide's motion [D.E. 23], and on December 22, 2015,

Nationwide replied [D.E. 24]. As explained below, the court grants Nationwide's motion for judgment on the pleadings and denies defendants' motion for judgment on the pleadings.

I.

On December 21, 2014, Jennifer Lynn Wilson ("Wilson") drove her 2004 Toyota pickup truck into a vehicle containing Howard Gosnell, Glenda Gosnell, and Nancy Gosnell in Winston-Salem, North Carolina. Compl. [D.E. 1] ¶ 9; Ans. [D.E. 11] ¶ 9. The accident seriously injured Howard Gosnell and Glenda Gosnell and killed Nancy Gosnell. Compl. ¶ 10; Ans. ¶ 10.[1] At the time of the accident, Wilson held an auto liability policy with Allstate Insurance ("the Allstate liability policy"). Compl. ¶ 12; Ans. ¶ 12. The Allstate liability policy provides bodily-injury liability coverage of up to $100,000 per person and $300,000 per accident. Compl. ¶ 12; Ans. ¶ 12; see [D.E. 1-5] 2. Howard and Glenda Gosnell held an insurance policy with Nationwide. Compl. ¶ 13; Ans. ¶ 13. That policy ("the Nationwide UIM policy") provides underinsured motorist bodily-injury liability coverage of up to $300,000 per person and $300,000 per accident. Compl. ¶ 13; Ans. ¶ 13; [D.E. 1-7] 3.

Through counsel, defendants submitted claims under both the Allstate liability policy and the Nationwide UIM policy. Compl. ¶ 14; Ans. ¶ 15. The parties dispute when Allstate tendered its policy limit. Compare Compl. ¶ 15, with Ans. ¶ 15. However, they agree that Allstate eventually paid $300,000 concerning the accident: $100,000 each to Howard Gosnell, Glenda Gosnell, and Nancy Gosnell. Compl. ¶ 15; Ans. ¶ 15.

---

[1] Robin Gosnell Logan, a named defendant in this action, is administrator for the estate of Nancy Gosnell. It is unclear from the pleadings when Nancy Gosnell died or when Robin Gosnell Logan became administrator of the estate. Therefore, the court's reference to "defendants" includes whomever represented Nancy Gosnell's interests at that time.

2

On February 27, 2015, Nationwide filed suit alleging that Allstate's tender "exhaust[ed] its per accident liability limit of $300,000." Compl. ¶ 15. Nationwide argues that its UIM policy's per-accident liability limit also was $300,000; therefore, defendants were not underinsured. Id. ¶¶ 16–20. According to Nationwide, because defendants were not underinsured, they cannot claim coverage under the Nationwide UIM policy. Id. In their counterclaim for declaratory judgment, defendants argue that they are underinsured under the Nationwide UIM policy notwithstanding Allstate's payment of $300,000. Ans. 3–4.

On November 3, 2015, defendants moved for judgment on the pleadings and filed a supporting memorandum [D.E. 20, 21]. On December 3, 2015, Nationwide moved for judgment on the pleadings and filed a supporting memorandum of law [D.E. 22, 22-2]. Nationwide's motion and memorandum largely restate the argument made in its complaint. Nationwide reiterates its request for a declaration that defendants were not underinsured and that Nationwide's UIM policy does not cover defendants' losses. See [D.E. 22-2] 4–7.

II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant a motion for judgment on the pleadings only if "accepting all well-pleaded allegations . . . as true and drawing all reasonable factual inferences from those facts in the [non-movant's] favor, it appears certain that the [non-movant] cannot prove any set of facts in support of his claim entitling him to relief." Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

A court ruling on a Rule 12(c) motion for judgment on the pleadings applies the same

3

standard as in a Rule 12(b)(6) motion to dismiss. See, e.g., Mayfield, 674 F.3d at 375; Burbach Broad. Co. of Del., 278 F.3d at 405–06. A motion under either rule tests the legal and factual sufficiency of the claim. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(c) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmovant]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Cahaly v. La Rosa, 796 F.3d 399, 405 (4th Cir. 2015); Burbach Broad. Co. of Del., 278 F.3d at 406. A court need not accept a pleading's legal conclusions. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Nor must it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted). Rather, plaintiffs' allegations must "nudge[] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79.

A federal court sitting in diversity applies the substantive law of the state under whose law the cause of action arises. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). North Carolina state law governs this action; therefore, the court must determine how the Supreme Court of North Carolina would rule on any disputed state law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). North Carolina does not, however, have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013). In predicting how the Supreme Court of North

4

Carolina would address a disputed state law issue, the court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In predicting how the Supreme Court of North Carolina would address a disputed state law issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 397–98 (quotation omitted). Moreover, in predicting how the Supreme Court of North Carolina would address a disputed state law issue, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

North Carolina's Motor Vehicle and Financial Responsibility Act imposes upon companies providing "motor vehicle liability polic[ies]" an obligation to offer customers "underinsured motorist coverage . . . equal to the highest limits of bodily injury liability coverage for any one vehicle insured under the policy." N.C. Gen. Stat. § 20-279.21(a), (b)(4). The statute aims to "allow[] the insured to recover when the tortfeasor has insurance, but his coverage is in an amount insufficient to compensate the injured party for his full damages." Freedman v. Nationwide Mut. Ins. Co., 332 N.C. 184, 189, 420 S.E.2d 124, 127 (1992). An insured qualifies for UIM coverage when "the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy." N.C. Gen. Stat. § 20-279.21(b)(4). UIM coverage extends only to "the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of the underinsured motorist coverage applicable to the motor vehicle involved in the accident." Id.

5

Both liability and UIM policies routinely include two limits on coverage: a per-person cap and a per-accident cap. See Nationwide Mut. Ins. Co. v. Haight, 152 N.C. App. 137, 141–42, 566 S.E.2d 835, 837–38 (2002). Before calculating the amount of coverage available under a UIM policy, a court determines under which cap the liability policy was exhausted. N.C. Farm Bureau Mut. Ins. Co. v. Gurley, 139 N.C. App. 178, 181–82, 532 S.E.2d 846, 848–49 (2000). Specifically, "when the negligent driver's liability policy [is] exhausted pursuant to the per-person cap, the UIM policy's per-person cap will be the applicable limit" for calculating the difference. Id. at 181, 532 S.E.2d at 849. Conversely, "when the liability policy [is] exhausted pursuant to the per-accident cap, the applicable UIM limit [is] the UIM policy's per-accident limit." Id.

Both Nationwide and defendants agree that Allstate tendered $300,000 dollars to all three defendants, in the amount of $100,000 per claimant. Compl. ¶ 15; Ans. ¶ 15; [D.E. 21] 8–9; [D.E. 22-2] 2–3. Nationwide, for its part, argues that Allstate's $300,000 tender exhausted its per-accident cap. [D.E. 22-2] 3–5; see [D.E. 1-5] 2. The per-accident cap under the Nationwide UIM policy is also $300,000. [D.E. 1-7] 3. Because the difference between these two caps is zero, Nationwide argues that defendants are not underinsured. See Gurley, 139 N.C. App. at 181–82, 532 S.E.2d at 848–49.

In opposition, defendants argue that the tender of $100,000 per defendant only counted toward and exhausted the Allstate liability policy's $100,000 per-person cap. [D.E. 21] 4–5; see [D.E. 1-5] 2. Defendants then note that Nationwide UIM policy's per-person cap is $300,000. [D.E. 1-7] 3. According to defendants, the $200,000 difference between the per-person caps in the two policies renders defendants underinsured and thereby triggers coverage under the Nationwide UIM policy. See [D.E. 21] 4–5.

In support of their motion for judgment on the pleadings, defendants cite Aills v. Nationwide

6

Mutual Insurance Company, 88 N.C. App. 595, 363 S.E.2d 880 (1988), as "controll[ing]" precedent. [D.E. 21] 6. In Aills, the North Carolina Court of Appeals held that the per-person liability cap "applies first and is to be looked to first." Aills, 88 N.C. App. at 597, 363 S.E.2d at 882. Alternatively, defendants argue that Allstate "clearly tendered its per-person limit" and not its per-accident limit, when it paid defendants under the policy. [D.E. 23] 4–5. In other words, defendants ask this court to view Allstate's payment of $300,000 as three discrete "exhaustions" of the Allstate liability policy's $100,000 per-person cap, instead of as one "exhaustion" of its $300,000 per-accident cap.

First, the court rejects defendants' argument that Aills controls the court's analysis. See Gurley, 139 N.C. App at 181, 532 S.E.2d at 848 (rejecting Aills as "[not] instructive[] as [it] ultimately relies on the language of the UIM policy itself, rather than the UIM statute"); see also Treadaway v. Niebauer, 625 S.E.2d 917 (N.C. Ct. App. 2006) (unpublished table decision) (reaffirming the Gurley holding where there are multiple claimants seeking UIM coverage). As for defendants' argument that Allstate "clearly tendered its per-person limit," the court also rejects this argument. Since Aills, no North Carolina appellate court has confronted the precise issue the parties raise here: how a court determines under which cap a policy is exhausted as to multiple claimants where either cap could have applied. Nonetheless, in predicting how the Supreme Court of North Carolina would rule, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 397–98 (quotations omitted).

In rejecting the Aills analysis in a dispute involving multiple claimants, the North Carolina Court of Appeals in Gurley stated that "giv[ing] defendants a windfall simply because they were involved in an accident with an underinsured motorist, as opposed to an insured or uninsured

7

motorist" amounts to an "absurd result[]." Gurley, 139 N.C. App. at 182–83, 532 S.E.2d at 849. Awarding defendants an additional $200,000 of compensation under the Nationwide UIM policy would involve the same absurdity as in Gurley. If Wilson (the negligent driver) had liability coverage identical to the Nationwide UIM policy, her liability policy would have provided coverage of $300,000 per person or $300,000 per accident. See [D.E. 1-7] 3. In that scenario, Wilson's liability insurance policy would not have paid more than $300,000 total to the three defendants. See Gurley, 139 N.C. App. at 182–83, 532 S.E.2d at 849. Moreover, if Wilson had no insurance, the Gosnells' uninsured-motorist policy with Nationwide would have applied. The Gosnells's uninsured-motorist policy with Nationwide would have provided coverage of $300,000 per person or $300,000 per accident. See [D.E. 1-7] 3. In that scenario, Nationwide would not have paid more than $300,000 total to the three defendants. See Gurley, 139 N.C. App. at 182–83, 532 S.E.2d at 849.

Pursuant to the reasoning in Gurley, the Allstate liability policy was exhausted under the per-accident liability of $300,000. This $300,000 figure represents the same amount that defendants would have obtained had Wilson been "either fully insured or uninsured altogether." See id. at 182, 532 S.E.2d at 849. Accordingly, the court predicts that, under these facts, the Supreme Court of North Carolina would compare the per-accident caps of the Allstate liability and Nationwide UIM policies. It likewise predicts that the Supreme Court of North Carolina would hold that the Nationwide UIM policy does not provide the requested coverage to the defendants. See id. at 181–82, 532 S.E.2d at 848–49.

III.

In sum the court GRANTS Nationwide's motion for judgment on the pleadings [D.E. 22] and DECLARES that the Nationwide UIM policy does not provide the requested coverage for

8

defendants' injuries arising out of the accident. The court DENIES defendants' motion for judgment on the pleadings [D.E. 20]. The clerk shall close the case.

SO ORDERED. This **23** day of August 2016.

                                                JAMES C. DEVER III
                                                Chief United States District Judge